# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, and | ) ) | |
| TERRI T. MOSLEY, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | CV617-100 |
| DOGENCORP, LLC, d/b/a DOLLAR GENERAL, | ) ) ) | |
| Defendant. | ) | |

# **ORDER**

In this Americans with Disabilities Act (ADA) complaint, where plaintiffs contend defendant regarded plaintiff-intervenor Terri T. Mosley as having a disability[1] and denied her employment because of it, defendant seeks an order directing Mosley to submit to a functional capacity evaluation (FCE) and to continue all deadlines. Defendant argues that because "Mosely's physical ability to perform the essential

---

[1] Mosley has "a brachial plexus injury" to her left arm "that substantially limits her in major life activities, including the operation of the neurological and musculoskeletal systems," requires her to wear a sling, and leaves her use of her left arm "very limited." Doc. 14 (intervenor complaint) at ¶ 9.

functions of the sales association position she sought at Dollar General, with or without reasonable accommodation, is a threshold issue in this case," an FCE is needed to "provide the parties and the Court an objective and relevant assessment of Mosley's ability to perform tasks that mirror the essential functions of the relevant position." Doc. 34 at 1; doc. 35 at 5-6 (noting that Mosley initially consented to an FCE, but withdrew that consent).

The EEOC and Mosley oppose, arguing that an FCE will not be relevant to the issue of whether Mosley could have performed the essential functions of her job in September 2015 (the relevant period) and there is sufficient evidence of her ability to perform the essential functions of the position without an FCE. Docs. 37 & 39. They also oppose defendant's request to further[2] modify the Scheduling Order, arguing that it has not shown good cause for its delay in either deposing Mosley's own identified treating physicians or previously seeking an FCE. Doc. 37 at 4-5 (noting that defendant has known since at least the time it filed its answer to Mosley's intervenor complaint and asserted she

---

[2] Defendant previously requested, and received, a 30-day extension of the close of discovery to conduct "focused discovery" on Mosley's application for Social Security Disability Insurance benefits. *See* docs. 30 at 2 & 33.

was not physically qualified to do the job and pursue an ADA claim, that her physical ability was a threshold issue in the case); doc. 39 at 1 (same as to defendant's answer to the EEOC's complaint).

Though Rule 35 does not set a hard deadline for filing a motion for an FCE, "by its terms [the rule] necessarily generates an expert report" and thus must "be timed in compliance with the deadlines prescribed by the Court." *Roberson v. Church*, 2009 WL 4348692 at *1 (M.D. Fla. Nov. 24, 2009). In other words, a party seeking an FCE must comply with Rule 26(a)(2), which governs the disclosure of witnesses "retained or specially employed to provide expert testimony in the case." *Id.* "Because the expert witness discovery rules are designed to allow both sides . . . to prepare their cases adequately and to prevent surprise, [cit.], compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *see* Fed. R. Civ. P. 26(a)(2)(A) (applying its disclosure requirement to "any witness [a party] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."). The expert-disclosure deadline passed in January 2018, more than two months before defendant filed the instant

motion. Docs. 21 & 27 (defendant's deadline to furnish expert witness reports and disclosures was January 26, 2018). And defendant asked for, and received, an extension to the Scheduling Order deadlines to complete fact discovery, with nary a peep about an FCE or expert needed to assess plaintiff's physical abilities. Doc. 30 at 2.

Defendant responds with incredulity, questioning the sincerity of Mosley's disability if she is unwilling to submit to a "neutral examin[ation]." Doc. 40 at 2. It also, however, explains that the FCE is not to generate an expert opinion about Mosley's functional ability -- it is to garner a physician's "lay opinion testimony" about his or her "reasonable opinions" of Mosley's abilities and limitations "based on their personal knowledge and observations." *Id*. at 2-3. As defendant would have it, unless and until the examiner "crosses the line from lay to expert testimony" by basing their testimony "on a hypothesis, not on the experience of treating the patient," that witness is exempt from the requirements of Rules 26 and 35. *Id*. at 3. In other words, the motion is timely because the examiner would be merely a passive observer and recorder of Mosley's physical functioning, offering no expert

4

interpretation or evaluation.³ *Id.* at 3-4.

The Court is skeptical, but it acknowledges that a physician who has observed plaintiff could offer mere observations of what she did while being observed. It is difficult, of course, to fully evaluate whether those observations tread into expert territory when they are not before the Court. For example, defendant contends the "examiner's observations will [ ] focus on job-related abilities such as whether Mosley can lift a 40-pound item properly and do so on a frequent basis, whether she can lift 55 pounds on occasion, and whether she can ascend and descend ladders while carrying merchandise." Doc. 35 at 7.

While the Court can imagine an obstacle course-like regimen that could evaluate such abilities without necessarily requiring "scientific, technical, or other specialized knowledge," it is not clear that hypothesizing plaintiff's capacities from even a multi-hour examination will not "cross the line" from concrete observation to speculation, and

---

³ As plaintiff-intervenor notes, the hallmark of Rule 35 examinations is that a written report outlining "findings, including diagnoses, conclusions, and the results of any tests" must be submitted -- essentially, an expert generates an expert report. Doc. 44 at 3. It is unclear why, if no such report is generated or necessary, an examining physician is even needed, rather than asking Mosley herself to admit, under oath, whether she can do those things or asking any lay person to observe her doing them. The need for a physician to observe her is unaddressed by either party, however.

thus, into expert territory. (After all, the examiner could watch her lift a 40-pound item 50 times, but then be barred from drawing any conclusion as to her ability to lift it a 51st time or assess her ability to do so successfully over the course of an 8-hour day). Without the evaluation itself, and despite its skepticism, the Court cannot yet make that call. And, because the FCE has not yet proven itself to be an expert opinion smuggled in under the pretense of non-expert discovery, the Court also cannot determine that it is untimely requested.

So, if defendant wants such a consultation, limited to observing plaintiff-intervenor's physical capacity as demonstrated and not as surmised from that demonstration, it may have one. This, of course, with the caveat that this grant is no guarantee that the selected physician's testimony will be relevant (*compare* docs. 39 at 8-9 & 44 at 4-6 (arguing that any such observations in spring 2018 will not be relevant to plaintiff's abilities in September 2015), *with* Deposition of Terri T. Mosley at 47-49 (testifying that since her 2013 injury, she has had virtually no use of her hand and arm)) or ultimately held to be inadmissible Fed. R. Evid. 702 expert testimony (for example, by offering an expert opinion about how Mosley's current functional abilities

correlate to her prior functional abilities or rebuttal testimony to undermine Mosley's treating physicians' observations and opinions as to her condition). The Court will have to await the results of the FCE before weighing in.

Defendant's request for an amendment to the Scheduling Order, a functional capacity evaluation, and expedited ruling are therefore **GRANTED**. Docs. 34, 42, & 43. Defendant is directed to schedule an FCE complying with the narrow authorization of this Order, and the Scheduling Order is commensurately amended to extend the fact discovery deadline to May 31, 2018, and the dispositive motion deadline to June 30, 2018.

**SO ORDERED,** this  11th  day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA