IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

EQUAL EMPLOYMENT OPPORTUNITY     *
COMMISSION,                           *
                                  *
      Plaintiff,               *
                                  *
TERRI T. MOSLEY,                 *
                                  *
      Plaintiff-Intervenor,   *
                                  *
        v.                       *       CV 617-100
                                  *
DOLGENCORP, LLC, d/b/a DOLLAR   *
GENERAL,                         *
                                  *
      Defendant.               *
                                  *

## O R D E R

Pending before the Court is Defendant's motion for summary
judgment. (Doc. 46.) Defendant seeks dismissal of Plaintiffs'
disability discrimination and retaliation claims brought under the
Americans with Disabilities Act ("ADA"). The Clerk of Court gave
Plaintiffs timely notice of Defendant's summary judgment motion
and the summary judgment rules, of the right to file affidavits or
other materials in opposition, and the consequences of default.
(Doc. 47.) Therefore, the notice requirements of Griffith v.
Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have
been satisfied. For the reasons set forth below, Defendant's
motion is **GRANTED IN PART AND DENIED IN PART**.

# I.  BACKGROUND

This case arises from an alleged adverse employment action suffered by Plaintiff-Intervenor Terri T. Mosley ("Mosley" or "Plaintiff"), by Defendant's agents.  Mosley filed a charge alleging disability discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff"), which brought this suit after an investigation and failed conciliation effort. (Compl., Doc. 1, ¶¶ 7-8.)  Defendant Dolgencorp, LLC operates Dollar General stores, including the store in Portal, Georgia where the alleged adverse employment action occurred.  (Id. ¶¶ 4, 10.)

## A.  Mosley's Left Arm Injury

Two years prior to the events underlying this case, Mosley was involved in a car accident that caused a brachial plexus injury and nerve damage to her left arm.  (Def.'s St. of Material Facts ("Def.'s SOMF"), Doc. 46-1, ¶ 10.)  Because of the injury, Mosley is unable to lift her left arm, grab anything with her left hand, or lift objects with her left arm.  (Dep. of Terri Mosley ("Mosley Dep."), Docs. 46-3, 49-3, at 48, 50, 173.)  Typically, Mosley wears her left arm in a sling while in public because she prefers for her arm to not simply hang by her side.  (Id. at 48.)  She uses medication to manage pain in her arm but indicated that she can still go about her day despite the pain.  (Id. at 114-15.)

2

Mosley testified that she is able to clean, babysit her nieces, shop, drive, and work her current job at Sonic, which includes carrying and unloading boxes. (Id. at 76-78, 126, 160-65.) However, when lifting boxes or other items at work Mosley does not use her left arm. (Id. at 173.) Further, she does not consider herself to be disabled, she simply has "an injury." (Id. at 88.) Mosley stated, "I mean, to be truthful, the only thing that really holds me back is tying my shoe." (Id. at 58.) Doctors have informed Mosley that it is uncertain whether she will ever regain ability in her left arm. (Id. at 113.)

## B. Mosley's Application for Employment at Dollar General

In 2015, Mosley applied for a cashier position at Defendant's store in Portal, Georgia. (Compl. ¶ 14.) On September 8, 2015, the Portal store's general manager, Chris Williams,[1] called Mosley to schedule an interview for the following morning; Mosley's grandmother answered the call and relayed the message to Mosley through another relative. (Dep. of Chris Williams ("Williams Dep."), Doc. 49-4, at 62-63; Mosley Dep. at 197.)

Mosley arrived at the store the following morning before it opened and approached Williams in the parking lot. (Mosley Dep. at 237-38.) When Mosley stated she was here for an interview,

---

[1] As general manager, Williams had the power to hire and fire employees and manage staff. (Williams Dep. at 25.)

3

Williams replied, "I didn't know that was you. You can't work here because of your arm." (Id. at 238.) Williams went on to say, "I've got to look out for myself. If you get in there and get hurt it's all going to fall back on me." (Id. at 246.) Mosley insisted that her arm injury would not hold her back and that she was a good candidate because she lived nearby and had reliable transportation. (Id. at 238.) Williams again pointed out that she had to look out for herself. (Id.) When Mosley became visibly upset, Williams told her to come back in an hour after Williams had an opportunity to speak with her district manager ("DM"). (Id. at 244-45.) Mosley did not think Williams would actually reach out to the DM, and when she returned to the store an hour later Williams had not done so. (Id. at 248, 250.) Williams denies making the statements to Mosley.[2]

That same day, Williams made other statements about Mosley to the Portal store's Assistant Manager Joshua Littles. When Littles arrived at work Williams asked if he knew "a girl named Terri Mosley" and began to recount the events of that morning stating, "the woman with the messed up arm? She came in for an interview this morning. If I had known it was her, I would not have called her for an interview." (Dep. of Joshua Littles ("Littles Dep."), Doc. 49-6, at 40-41 & Ex. 1, ¶ 5.) Williams went on to say she

---

[2] The parties did not provide the relevant portion of Williams's deposition, but Defendant indicated in its brief that Williams denies making the statements.

4

would not hire Mosley and was never going to hire Mosley. (Id., Ex. 1, ¶ 5.)

Later on September 9th, Mosley called Defendant's customer hotline and filed a complaint against Williams, claiming that she had not been given a fair interview. (Def.'s SOMF, ¶ 5.) The Portal store's DM Alicia Dixon reached out to Mosley regarding the complaint. (Id. ¶ 6.) During that conversation, Mosley told Dixon what happened, and Dixon assured her that Defendant does not discriminate and promised to investigate. (Dep. of Alicia Dixon ("Dixon Dep."), Doc. 49-5, at 21.) Dixon claims that she told Mosley to return to the store that day and Williams would give her an interview. (Id. at 22.) Alternatively, Mosley testified that Dixon did not tell her to return to the store to speak with Williams and ended the conversation by promising to investigate and call Mosley back. (Mosley Dep. at 278-79.)

Further, Mosley claims that Dixon only told her that an investigation would not guarantee her a job, to which Mosley responded that she "didn't want the job after how [she] was treated."[3] (Id. at 270.) In Defendant's response to the EEOC Charge, it claimed Dixon told Mosley she would investigate the matter. (Decl. of C. Austin Harris ("Harris Decl."), Doc. 49-2,

---

[3] Mosley testified that she only made a complaint because she felt Williams mistreated her and she "wanted somebody to go take care of Mrs. Williams." (Mosley Dep. at 270.) While Mosley wanted "something to be done about the situation," she no longer wanted the job for herself. (Id. at 270-71.)

5

Ex. 1 at 3.) Williams testified that Dixon told her to give Mosley another chance to interview. (Williams Dep. at 81.) Mosley never returned to the store to discuss the job. (Mosley Dep. at 279.) Thus, there is some conflicting evidence as to whether Dixon offered Mosley another interview or simply promised to investigate.

At any rate, Mosley was not hired by Defendant. She later took a job working at Sonic in April 2016. (Id. at 30.) Four or five months after the events of September 9th, Mosley was offered a job at the Statesboro Dollar General store by her cousin Felicia Johnson, who was the general manager of that location. (Id. at 280, 283.) Mosley declined the job offer. (Id. at 280.)

## C. The EEOC Charge and Investigation

Soon after the September 9th incident, Mosley timely filed a charge of discrimination with the EEOC. (Harris Decl. ¶ 3.) In that charge, Mosley claimed disability discrimination but did not check the form's box for a retaliation claim. (Id. ¶ 5.) The EEOC investigated the charge and found a factual basis to conclude a retaliation claim was appropriate. (Id.) The EEOC heard from Defendant on the claims and concluded there was reasonable cause to conclude Mosley was subjected to disability discrimination and retaliation in violation of the ADA. (Id., Ex. 2.) On June 27, 2017, the EEOC issued a Notice of Failure of Conciliation stating

that it was unable to secure an acceptable conciliation agreement from Defendant. (Compl., ¶ 8.) Shortly thereafter, the EEOC filed this lawsuit, in which Mosley has successfully intervened as a plaintiff. (Order of Oct. 12, 2017, Doc. 15.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.'" Four Parcels of Real Prop., 941 F.2d at 1438 (quoting Celotex Corp., 477 U.S. at 331 (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" Id. (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).

When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606–08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id.

8

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. For example, if the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

9

## III. DISCUSSION

Defendant's motion for summary judgment seeks dismissal of Plaintiffs' claim for disability discrimination and claim for retaliation. Defendant contends that Plaintiffs cannot prove all of the necessary elements of either claim.

### A. Disability Discrimination Claim

The ADA prohibits an employer from discriminating in hiring an applicant on the basis of disability. 42 U.S.C. § 12112(a). To establish a claim for discrimination under the ADA the plaintiff must show: (1) she has a disability, (2) she is a qualified individual, and (3) she was discriminated against because of her disability. Jarvela v. Crete Carrier Corp., 776 F.3d 822, 828 (11th Cir. 2015). Defendant argues that Plaintiffs cannot prove the first and third elements of the discrimination claim.[4] The Court will address each in turn.

### 1. Mosley's Qualification as Disabled Under the ADA

Defendant argues that Plaintiffs cannot establish the first element of a discrimination claim because Mosley's testimony shows

---

[4] In a footnote, Defendant contends Plaintiffs cannot prove element two. It noted that after the Court ruled on Defendant's Rule 35 motion and Mosley underwent a functional capacity evaluation ("FCE"), it would supplement its summary judgment motion. The Court granted Defendant's Rule 35 motion and ordered Defendant to schedule a FCE. (Order of May 11, 2018, Doc. 47, at 7.) Defendant, however, has not further addressed the second element, despite filing a reply brief after the Court granted the Rule 35 motion. As such, the Court does not consider Defendant's motion to dispute Plaintiffs' ability to prove the second element of a discrimination claim.

that her arm does not inhibit her daily life activities and that she does not consider herself to be disabled. Defendant further argues that it did not consider Mosley to be disabled.

A person qualifies as disabled if she has either (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). In 2008, Congress amended the ADA to "lessen the standard of establishing whether an individual has a disability." H.R. Rep. No. 110-730, at 9 (2008). The definition of disability is now to be construed "in favor of broad coverage of individuals" and should not demand "extensive analysis." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j)(1)(iii).

Subsequent regulations promulgated after the 2008 amendments lay out rules of construction for determining whether an impairment substantially limits a major life activity. "Substantially limits" is not a demanding standard and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1). Further, "an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. It only needs to limit the plaintiff's ability to perform a major life activity "as compared to most people in the general population." Id.

11

Construing all reasonable doubts about the facts in favor of Plaintiffs, the Court finds there is a genuine issue of material fact regarding whether Mosley is disabled under the first prong of the ADA's disability definition. While Mosley testified that she can perform many daily tasks despite her arm injury, she is unable to use her left arm when performing those activities. The inability to use her left arm to carry anything or even grip anything limits Mosley's abilities compared to most people. See 29 C.F.R. § 1630.2(j)(1). Moreover, the 2008 amendments to the ADA and subsequent regulations make clear that "substantially limits" should be construed in favor of broad coverage and is not a demanding standard. Id.

Even if Plaintiffs could not raise a factual issue regarding Mosley being disabled under the first prong of the disability definition, they have carried their burden under the third prong by showing Defendant regarded Mosley as disabled. An individual satisfies the "regarded as" prong where she establishes that a prohibited action was taken against her "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(1)(C), (3); see also Andrews v. City of Hartford, 700 F. App'x 924, 926 (11th Cir. 2017). Prohibited actions include refusal to hire. 29 C.F.R. § 1630.2(l)(1). Even where the employer establishes a defense to the action, the

plaintiff still qualifies as disabled is she was regarded as having an impairment. Id. § 1630.2(l)(2).

The statements Williams made to Mosley on September 9th demonstrate that she regarded Mosley as having a disability. Williams's remark that Mosley "can't work here because of your arm" and her concern that Mosley would injury herself show that Williams believed Mosley's left arm injury was a disability.

Further, the Portal store's assistant manager testified that Williams called Mosley "the woman with the messed up arm." (Littles Dep. at 40-41 & Ex. 1, ¶ 5.) Identifying Mosley solely by reference to her arm injury shows Williams regarded Mosley as disabled. Moreover, when Littles asked Williams why she would not have called Mosley for an interview, Williams replied "because of her arm." (Id., Ex. 1, ¶ 5.) This comment shows Williams took a prohibited action against Mosley because of her physical impairment. Thus, there is evidence that Williams regarded Mosley as having a disability, and, therefore, Plaintiffs can establish the first element of their discrimination claim.

In its briefs, Defendant cites to several cases to prove that Mosley is not disabled and was not regarded as disabled. However, most of these cases were decided before the 2008 amendments to the ADA and employed a more demanding standard for determining a plaintiff's disability than the one that applies to this case.

The two post-amendment cases, Pringle v. Family Dollar Stores of Georgia, Inc.[5] and Ward v. City of Gadsden,[6] cited to prove Mosley is not disabled are both distinguishable. In Pringle, the plaintiff underwent corrective surgery for her foot injury and was cleared by her doctor to return to work without limitation. Id. at *11. In Ward, the plaintiff did not suffer from a physical injury, but rather was diagnosed with depression. Id. at *7. While depression can be a disability under the ADA, the plaintiff in Ward did not produce any evidence of how his activities had been substantially limited, relying instead on his diagnosis and treatment. Id. at *15.

Additionally, Defendant's reliance on Carruthers v. BSA Advert., Inc.[7] and D'Angelo v. ConAgra Foods, Inc.[8] to prove Defendant did not regard Mosley as disabled is misplaced. Those cases applied the "broad range of jobs" standard from Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). The 2008 amendments to the ADA were intended to abrogate Sutton and lower the standard for a plaintiff to show she was regarded as being disabled. Andrews, 700 F. App'x at 926. In sum, Plaintiffs have raised a triable issue as to whether Mosley is disabled under the first and third prong of the ADA's disability definition.

---

[5] 2014 WL 4926386 (S.D. Ga. Sept. 30, 2014).
[6] 2017 WL 568556 (N.D. Ala. Feb. 13, 2017).
[7] 357 F.3d 1213 (11th Cir. 2004).
[8] 422 F.3d 1220 (11th Cir. 2005).

## 2. Evidence of Disability Discrimination

Next, Defendant argues that Williams's statements[9] do not constitute evidence of direct discrimination because they do not show a refusal to hire Mosley, merely a general concern for Mosley's on-the-job safety.  Further, Defendant contends that Mosley's statements to Dixon prove that she voluntarily withdrew from the application process before a hiring decision was made.  This withdrawal, Defendant argues, serves as an intervening event that made Williams's statements irrelevant to the decision-making process.

Plaintiffs may avoid summary judgment on the discrimination claim in one of two ways.  They may rely on direct evidence to create a triable issue on whether Mosley was denied employment because of her disability.  Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir. 2005).  Alternatively, Plaintiffs may use circumstantial evidence and rely on the McDonnell Douglas framework[10] to create a triable issue.  Id.

Direct evidence is "evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal characteristic."  Wright v. Southland Corp., 187 F.3d

---

[9] Defendant maintains that Williams denies she made the alleged statements.
[10] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

1287, 1300 (11th Cir. 1999). The Eleventh Circuit has found direct evidence where statements of an employer reflect a discriminatory attitude correlating to the discrimination alleged by the applicant. Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189-90 (11th Cir. 1997) (collecting cases with statements of direct discrimination). In a disability discrimination claim, "where the non-movant presents direct evidence that, if believed by a jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." Id. at 1189 (quoting Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)).

In this case, Williams's statements constitute direct evidence of discrimination. Williams told Mosley she could not work at Defendant's store "because of her arm." (Mosley Dep. at 238.) Later, Williams referred to Mosley as "the woman with the messed up arm," she stated she would not have set up an interview had she known about Mosley's arm, and went on to say that she would never hire Mosley. (Littles Dep. at 40-41 & Ex. 1.) At the time, Williams, as general manager, was the decisionmaker for hiring employees at Defendant's Portal store. Either statement alone is sufficient to raise a triable issue as to whether Mosley was denied employment because of her disability.

Summary judgment is not appropriate here because Plaintiffs have presented direct evidence of discrimination. Further,

16

Defendant's conflicting evidence — that Mosley was not hired because she withdrew her application — cannot overcome the direct evidence of discrimination. <u>See</u> <u>Merritt</u>, 120 F.3d at 1189-91. Indeed, the reason why Mosley did not want the job was because of Williams's discriminatory statements to her. (Mosley Dep. at 270 ("And I let [Dixon] know that, you know, I didn't want the job after how I was treated.").) Because there is direct evidence of discrimination, the Court need not address the parties' arguments regarding the *McDonnell Douglas* burden shifting framework. Accordingly, Defendant's motion for summary judgment on Plaintiffs' discrimination claim is denied.

## B. Retaliation Claim

Defendant takes the position that Mosley did not administratively exhaust her retaliation claim because her EEOC charge did not make that claim. Alternatively, Defendant argues that Plaintiffs cannot establish a *prima facie* case of retaliation because Mosley withdrew her application before any retaliation could occur.

### 1. Administrative Exhaustion Requirement

Prior to filing an ADA discrimination claim, a plaintiff must first file a charge of discrimination with the EEOC. <u>See</u> 42 U.S.C. § 12117; <u>Gregory v. Ga. Dep't of Hum. Res.</u>, 355 F.3d 1277, 1279 (11th Cir. 2004). The purpose of the exhaustion

17

requirement is to permit the EEOC to investigate a claim and facilitate voluntary compliance or informal resolution. Gregory, 355 F.3d at 1279. Consistent with this purpose, a plaintiff's judicial complaint is limited by the scope of the EEOC investigation. Id. However, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988). The Eleventh Circuit has adopted the view that "the scope of an EEOC complaint should not be strictly interpreted." Gregory, 355 F.3d at 1280 (quoting Sanchez v. Standard Brands, Inc., 432 F.2d 455, 460 (5th Cir. 1970)).

With regard to Plaintiffs' retaliation claim, Mosley's EEOC charge and the subsequent investigation satisfy the administrative exhaustion requirement. The EEOC investigation revealed Mosley's complaint to Dixon provided a factual basis to pursue a retaliation claim. The EEOC also informed Defendant that a retaliation claim was appropriate and afforded Defendant an opportunity to respond to the claim, which Defendant declined to do. (Harris Decl. ¶¶ 5-6.) Because the EEOC investigated the claim and gave Defendant an opportunity to respond, the purposes of the exhaustion requirement were satisfied. While Mosley did not check the box for retaliation on the charge, this does not bar the claim. See Gregory, 355 F.3d at 1280 (failure to check box for retaliation did not bar claim

because "a reasonable EEOC investigator could have concluded that what [plaintiff] complained about is retaliation"). As such, the retaliation claim grew out of an earlier charge and is properly before this Court.

## 2. *Prima Facie* Case

The ADA provides, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge." 42 U.S.C. § 12203(a). To establish a claim for retaliation a plaintiff must show that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).

As Defendant points out, Plaintiffs cannot establish the third element of their retaliation claim. Mosley admits that by the time she complained to Dixon — the statutorily protected activity — she no longer wanted the position at the Portal store. Mosley only made the complaint because she felt Williams mistreated her, not because she still wanted the job. Essentially, the only adverse employment action suffered by Mosley occurred *before* she complained to Dixon about Williams's discriminatory statements. After the complaint, Defendant took no further actions that could

provide a basis for a retaliation claim. Therefore, the refusal to hire cannot be causally related to the complaint to Dixon.

The fact that Mosley no longer wanted the job is further supported by her failure to show up to the interview purportedly scheduled by Dixon. Although the parties dispute whether an interview was set up or not, the discrepancy is irrelevant because Mosley told Dixon that she no longer wanted the position. Put differently, the factual dispute over an interview offer is not material to the retaliation claim because Mosley's withdrawal was an intervening event that broke any causal relationship between her making the complaint and the refusal to hire.

Plaintiffs have otherwise failed to point to any genuine issue of material fact that could preclude summary judgment on the retaliation claim. As such, Defendant's motion for summary judgment on Plaintiffs' claim for retaliation is granted.

## IV.  CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (doc. 46) is **DENIED** as to the disability discrimination claim and **GRANTED** as to retaliation claim. Thus, this case will proceed to trial on Plaintiffs' disability discrimination claim in due course.

**ORDER ENTERED** at Augusta, Georgia, this _29th_ day of November, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA